UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

NO. 09-046-JJB

OSCAR HILLS, IV

## <u>RULING ON MOTION TO WITHDRAW GUILTY PLEA</u>

This matter is before the court on a motion (doc. 145) to withdraw plea of guilty by defendant Oscar Hills, IV ("Hills"). Numerous briefs have been filed; and the court held an evidentiary hearing in July of 2013 (docs. 155 and 156).

On April 1, 2009, Oscar Hills was indicted on four counts of wire fraud. Essentially, Hills was charged with using interstate wire transmissions to fraudulently obtain insurance proceeds from State Farm Fire and Casualty Company ("State Farm"). More specifically, Hills operated a business, known as Baton Rouge Teen Summit Foundation, Inc., which suffered structural and content damages during a rain storm in March of 2004. Hills filed a claim with State Farm and was issued a check in the amount of $18,113.22 for property damages sustained by Teen Summit.[1]  According to the indictment, State Farm informed Hills that "that additional payments could be issued if his cost of replacing business property actually cost more than the amount of $18,113.22." Hills then allegedly devised a scheme to collect additional payments by presenting altered invoices and falsely representing to State Farm that actual purchases

---

[1]  The State Farm policy included a standard four-year depreciation provision so the check represented the actual cost value ("ACV") of the items minus a depreciation amount of a fourth of their value since they were a year old. ACV is based upon depreciated value or whatever the property was worth at the time of the damage. The policy also provided for replacement value coverage ("RVC"), the costs of actually replacing the contents due to a covered loss.

had been made to replace the insured property exceeding $18,113.22. State Farm allegedly paid an additional $8,783.27 to Hills as a result of the false invoice documents.

This case went to bench trial before Judge Ralph Tyson on April 26, 2010, with Rodney Baum representing defendant. On the first day of trial, the court heard testimony of three witnesses for the government (doc. 27). On the second day of trial, Hills informed the court that he would plead guilty on all counts pursuant to a plea agreement with the government. (Doc. 29). After fully advising defendant of his rights, Judge Tyson found that Hills had made a knowing, voluntary and intelligent plea, which was supported by an adequate factual basis. Accordingly, Judge Tyson accepted the plea of guilty on all counts (doc. 28).

On June 19, 2010, Mr. Baum filed a motion to withdraw as counsel for defendant, stating that Hills had attempted to file a pro se motion seeking to withdraw his guilty plea and that he obviously wished to obtain other counsel. Mr. Baum was promptly allowed to withdraw; and, on June 23, 2010, Hills filed a motion to withdraw his plea (doc. 33) claiming that he had proof of his innocence and that the prosecutor and ATF agent had conspired to present false evidence against him (doc. 33). On July 12, 2010, Hills represented himself during the hearing on the motion to withdraw plea; Judge Tyson denied the motion (doc. 37). Hills was sentenced on March 17, 2011.

Thereafter, Hills brought a motion (doc. 58) to vacate under 28 USC § 2255. The magistrate judge issued a report and recommendation that the motion be denied; the undersigned approved and adopted that report (doc. 88). On appeal, the Fifth Circuit granted a motion by the government to remand the case back to this court (doc. 111). In its motion to remand, the government conceded that Judge Tyson had failed to

adequately ensure that Hills' decision to represent himself, at the hearing on the motion to withdraw his plea, was knowing and intelligent. Doc. 109. All of this culminated in the motion to withdraw plea (doc. 145) that is presently before the court. The current motion has been submitted on briefs following an evidentiary hearing at which Hills was duly represented by John Craft. Hills argues that he should be able to withdraw his plea because he is actually innocent of the charges and because he was unfairly coerced into pleading guilty by his trial counsel, Mr. Baum.

Rule 11(d) of the Federal Rules of Criminal Procedure governs this situation, providing in pertinent part: "A defendant may withdraw a plea of guilty… [a]fter the court accepts the plea, but before it imposes sentence if… [t]he defendant can show a fair and just reason for requesting the withdrawal." In determining whether there is a 'fair and just reason," the court takes into consideration whether: (1) the defendant has asserted his innocence; (2) the government would suffer prejudice if the withdrawal motion were granted; (3) the defendant has delayed in filing his withdrawal motion; (4) the withdrawal would substantially inconvenience the court; (5) close assistance of counsel was available; (6) the original plea was knowing and voluntary; and (7) the withdrawal would waste judicial resources. *U.S. v. Carr*, 740 F.2d 339, 344 (5th Cir. 1984). While each factor should be considered, no single factor is determinative. In short, the court is afforded broad discretion in making its decision based upon the "totality of the circumstances." *Id.*

As to the first factor, Hills has clearly asserted his innocence; however, a "mere assertion of legal innocence" is not a "fair and just" reason for withdrawal of a guilty plea. *Carr* at 344. Defendant has asserted his innocence by repudiating the testimony

of the claim agent presented during the first day of the trial.  The government contends that defendant at best offers impeachment evidence, which is insufficient to establish defendant's innocence.  The court agrees with the government on this point. Additionally, when he pled guilty, Hills admitted to submitting five false invoices to State Farm (by representing that he had made actual purchases of equipment) as part of the factual basis contained in the plea agreement. The detailed factual basis provides a "strong presumption of verity".[2]  Defendant contends that he was coerced by Mr. Baum to lie about his guilt when he agreed to the factual basis.  For the reasons discussed below, the court finds no such coercion. Defendant fails to overcome the "strong presumption of verity" of the factual basis that he agreed to when pleading guilty.[3]

Turning to the second factor, the court considers whether the government would suffer prejudice if the withdrawal motion was granted.  It may be assumed that there would be difficulties stemming from the government having to resume trial preparations after a three year hiatus.  Additionally, the government argues that it had to pay travel costs of two witnesses from Ohio, one from Utah and another from New Orleans.  The court finds that some minimal prejudice would fall upon the government in having to retry this matter.

---

[2]  *U.S. v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009).

[3]  Hills contends that the $18,113.22 payment did not include the ACV of customized electronic equipment that State Farm could not quote accurately because of their unique nature. Consequently, Hills contends that State Farm needed estimates to pay the ACV of the customized items and the invoices that he submitted were just estimates.  The government contends that these invoices were manipulated and used by Hills to intentionally defraud State Farm by falsely representing that actual purchases had been made, entitling him to additional RCV insurance money. The court finds that, contrary to what defendant asserts, the claims adjuster's testimony is consistent with the government's theory of prosecution and with the factual basis contained in the plea agreement.  The court finds no real substance to the claim of actual innocence.

As to the third factor, the record shows that defendant's original motion was filed on June 23, 2010, some 57 days after his pleading guilty. See, docs. 28 and 33. As a rule of thumb, the longer a defendant delays in bringing the motion, the more substantial reasons he must provide to support it. *Carr*, 740 F.2d at 344. The defendant should not be allowed to "wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." Id. at 345.

However, in this case, Hills claims that he attempted to file a pro se motion shortly after he pled guilty and that it was returned to him by the court because he was represented by counsel at that time. The motion that Mr. Baum filed on June 19, 2010, to withdraw as counsel for Hills, does make reference to defendant having "recently" attempted to file his own motion to withdraw his plea. Doc. 31. Additionally, Hills has offered a letter postmarked on June 2, 2010. Considering the foregoing, the court is willing to accept that Hills did attempt to file his own motion about 36 days after pleading guilty but even this period of time may be considered to be untimely. In *Carr*, a 22 day delay was found to be untimely. In any event, the court does not see this factor as being particularly significant in the overall analysis.

The court will consider the fourth (inconvenience to the court) and seventh (waste of judicial resources) factors together. Defendant decided to plead guilty on the second day of what was scheduled to be a one-week bench trial. In *U.S. v. McKnight*, 570 F.3d 641 (5th Cir. 2009), the Fifth Circuit found that rescheduling a 2 day trial could be a significant inconvenience. In *Carr*, the Fifth Circuit found that rescheduling a two to three week trial amounted to a substantial inconvenience. *Carr* at 345. The undersigned has recently presided over more trial and proceeding hours than most other district

judges within the Fifth Circuit. Rescheduling this trial would significantly inconvenience the court and waste judicial resources, particularly as Judge Tyson has since passed away necessitating a complete duplication of judicial resources.

The fifth factor to be considered is whether the defendant had close assistance of counsel. "Close assistance of counsel under Federal Rule of Criminal Procedure 11(d)(2)(B) and constitutionally ineffective assistance of counsel under the Sixth Amendment are distinct issues." *McKnight* at 646. Under the jurisprudence, "close assistance of counsel" has been found when the defense attorney: (1) informed his client of potential conflicts with representation, (2) negotiated a favorable plea agreement, and (3) had discussions with the defendant regarding prior counsel's advice. *Carr*, 740 F.2d at 343. Another case finding close assistance of counsel looked to defense counsel's actions in: (1) making several motions, including a motion to suppress; (2) negotiating a plea agreement; and (3) informing his client and the court when a conflict arose. Id. *McKnight* at 647 (*citing United States v. Benavides*, 793 F.2d 612, 614-615 (5th Cir. 1986)).[4] Similarly, close assistance of counsel was held to exist when: (1) the defendant discussed with his counsel "all possible defenses"; and (2) the district judge relied upon his personal knowledge of defense counsel's integrity.[5] *United States v. Hurtado*, 846 F. 2d 995, 997 (5th Cir. 1988).

Mr. Baum has practiced extensively before this court in criminal cases. The undersigned has never had reason to question his competency or integrity as an

_____

[4] See also, *United States v. Morris*, 85 F. App'x 373,374 (5th Cir. 2003) (where a discussion of "the entire case" was enough to summarily deny a claim of not receiving close assistance of counsel).
[5] In *Hurtado*, the defendant claimed that he was pressured into pleading guilty plea by his attorney's advice that he would get a harsher sentence if he were found guilty after a trial.

attorney. Having reviewed Mr. Baum's affidavit (doc. 72) which was submitted in connection with defendant's §2255 motion, the court finds that Mr. Baum met with defendant and discussed the case at length. Mr. Baum successfully sought a continuance of the trial; met and reviewed the matter with defendant's prior counsel; reviewed extensive documents produced in discovery; interviewed potential witnesses; prepared witness files and documents for trial; and repeatedly counseled defendant on the benefits of a global settlement of all his pending and potential criminal matters. Indeed, Mr. Baum's cross examination of the witnesses on the first day of trial is indicative of highly effective assistance of counsel. The affidavit further shows that Hills received close assistance of counsel in connection with the decision to plead guilty rather than to proceed with the trial before Judge Tyson. The court rejects Hills' claim that Mr. Baum was unprepared or did not provide close assistance of counsel during the time that he represented defendant.

As to the sixth factor, the court must consider whether defendant's plea was made knowingly and voluntarily. The plea colloquy shows that Hills was extensively questioned by Judge Tyson on this topic. Hills agreed that: (1) he had read and understood the plea agreement, (2) he was in good mental and physical health when entering the plea, (3) he was satisfied with his attorney's work, (4) he was not threatened, coerced, or intimidated into making the plea, and (5) he was knowingly and voluntarily pleading guilty. Judge Tyson's oral reasons (denying defendant's first withdrawal motion) contain an excellent summary of the Rule 11 examination, which the undersigned adopts by reference (doc. 38). This factor strongly weighs against granting defendant's motion.

Nevertheless, Hills testified that he was "coerced" by Mr. Baum to plead guilty. Defendant's definition of coercion is not supported by the law. Accepting Hill's testimony as true, it simply establishes that Mr. Baum told Hills what was contained in paragraph 2 of the plea agreement (doc. 29). That is, the government agreed "not to bring criminal charges in this district against the defendant for the frauds committed upon the Bankruptcy Court, the Farm Bureau, and upon Eagle Federal Credit Union and Ascension Credit Union". Also, the government agreed not to bring any "additional criminal charges related to the violations contained in the Indictment."[6] This is not coercion; this exchange is a permissible[7] and common occurrence in many plea agreements. It is, also, evidence of close assistance of counsel. As this is the only evidence that Hills has presented to maintain that his plea was tainted, the court finds that Hills knowingly and voluntarily entered into the plea agreement.

In conclusion, the court finds that defendant's claims of actual innocence and coercion are totally unsupported and do not justify relief. The documented plea colloquy creates a presumption that the plea was entered into knowingly, voluntarily, and intelligently. Moreover, the court finds that Hills had close assistance of counsel; and rescheduling the trial would inconvenience the court and would waste judicial resources. Considering the totality of the circumstances, the court finds that the motion should be denied because defendant has not shown a fair and just reason for granting it.

---

[6] Hills testified that this coercion included Mr. Baum telling him that if he did not plead guilty the government would "come after" his family. The court does not find this testimony credible, particularly as there was no mention of this in defendant's original motion to withdraw his plea (doc. 33) or during his hearing before Judge Tyson (doc. 38).
[7] See, *State v. Franco*, 646 So.2d 1043, 1046 (La. App. 5th Cir. 1994).

Accordingly, defendant's Motion to Withdraw Plea of Guilty (doc. 145) is hereby DENIED.

Signed in Baton Rouge, Louisiana, on September 4, 2013.

_____

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**